UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-00395-TWP-DLP-2 |
| ) | |
| RONALD COLBERT a/k/a ) | |
| RONALD SYLVESTER COLBERT, JR., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Ronald Colbert's ("Colbert") Motion to Suppress (Filing No. 86). Colbert is charged in Count Two of the Indictment with Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Colbert asserts that the search and seizure conducted on November 14, 2018, violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. For the following reasons, Colbert's Motion to Suppress is **denied**.

## I. FINDINGS OF FACT

There are no factual disputes to be resolved regarding the Motion to Suppress, so no evidentiary hearing is necessary.[1] On November 14, 2018, surveillance was conducted by officers of the Drug Enforcement Administration ("DEA") at a suspected drug house in Indianapolis, Indiana, which was allegedly used by Michael Edwards, a co-defendant in this case. Law

---

[1] The Government correctly notes that Colbert is not entitled to a hearing on his Motion to Suppress. A hearing is not required unless the movant demonstrates a significant factual dispute that must be resolved. *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990); *see also United States v. Moreland*, 703 F.3d 976, 981–82 (7th Cir. 2012) (defendants' request for evidentiary hearing "properly refused because they were unable to specify any assertion in the government's affidavits that they could contest with evidence"). Colbert raised no disputed issues of material fact, rather he adopted "the allegations in the Complaint and Affidavit (Filing No. 2), as well as Detective Dirk Fentz's Probable Cause Affidavit." (Filing No. 87 at 1, n.1.)

enforcement officers observed a gray 2005 Pontiac Grand Am ("the Pontiac") arrive and park in the driveway of the suspected drug stash house. Officers observed a Black male exit the vehicle and walk out of sight toward the front door of the house. The officers observed the license plate of the vehicle—AVB688. A search of Indiana Bureau of Motor Vehicles records revealed that the vehicle was registered to Colbert. Officers observed an individual exit the garage of the stash house and enter the Pontiac. They also observed the taillights of a vehicle parked in the garage light up. The two vehicles departed the stash house, and officers maintained surveillance on the Pontiac as it travelled west on Rockville Road and then south on Ronald Reagan Parkway.

Brownsburg Police Department Detective Dirk Fentz ("Detective Fentz") was notified by DEA Task Force Officer Derek Heller ("Officer Heller") that a gray Pontiac had departed the suspected drug house. Detective Fentz observed the Pontiac cross the white fog line on two occasions, fail to maintain its proper lane of travel, and fail to properly signal a lane change. Detective Fentz initiated a traffic stop near the intersection of Ronald Reagan Parkway and E County Road 100 South in Hendricks County, Indiana.

When Detective Fentz activated his police lights, the Pontiac did not pull over to the shoulder in a timely manner. While approaching the passenger window of the Pontiac, Detective Fentz immediately smelled a strong odor of marijuana. Detective Fentz advised the driver why he had been stopped and asked for his driver's license and vehicle registration. Detective Fentz identified the driver of the vehicle to be Colbert and asked Colbert to accompany him back to the police vehicle so that he could issue a written warning for the traffic violations. Colbert had to be asked several times before he finally exited his vehicle. Detective Fentz noticed that Colbert hesitated and looked back at his car. Detective Fentz also noticed a bulge in Colbert's pants pocket as he walked to the police vehicle, but he did not search Colbert's person or clothing at that time.

Once they were inside the patrol vehicle, Detective Fentz continued to smell a strong odor of marijuana coming from Colbert. While preparing the written warning, Detective Fentz observed Colbert become increasingly nervous. His chest was rapidly rising and falling in an exaggerated manner, and he began talking and asking multiple questions. Detective Fentz radioed Officer Chad Brandon ("Officer Brandon") to assist him with the stop because of Colbert's nervous behaviors. While sitting next to Colbert, Detective Fentz continued to smell marijuana coming from Colbert and asked whether Colbert had anything illegal in his vehicle. Colbert responded that there was not. Detective Fentz asked if Colbert would consent to a search of his vehicle and Colbert agreed. Colbert read the form, signed it, and voluntarily gave Detective Fentz consent to search his vehicle. While running Colbert's information, Detective Fentz learned that Colbert had a concealed carry permit.

When Officer Brandon arrived on the scene, Detective Fentz exited his patrol vehicle and advised Officer Brandon of the written consent to search and that he had not yet searched Colbert for weapons or patted him down, even though he had noticed a bulge earlier. Detective Fentz requested the pat down because "it was known at this time that Colbert had a firearm permit, which can mean that a person with such a permit may be armed." Detective Fentz began the search of Colbert's vehicle, and Officer Brandon approached Colbert. Officer Brandon also smelled a strong odor of marijuana coming from Colbert.

Officer Brandon asked Colbert to step out of the vehicle so that he could conduct a pat down search. While conducting the pat down search of Colbert, Officer Brandon felt a bulge in the pants pocket, and he asked Colbert if he could retrieve the object, to which Colbert consented. The object was Colbert's cellular telephone and approximately $400.00 in cash. Then Officer Brandon felt a hard object in the front of Colbert's waistband. Thinking it was a firearm, Officer

3

Brandon asked Colbert what the object was, and Colbert began to reach for the object. Officer Brandon was able to pull the object from Colbert's pants, and it was a white-colored brick of a controlled substance in a clear, plastic heat-sealed bag.

While Detective Fentz was searching Colbert's vehicle, he heard Officer Brandon yell his name multiple times, asking him to come back to where he was searching Colbert. After Detective Fentz approached Officer Brandon and Colbert, Officer Brandon handed him the clear, plastic heat-sealed bag containing the white-colored brick. Officer Brandon then placed Colbert in handcuffs and advised Detective Fentz of the events that had just occurred. Detective Fentz completed the search of Colbert's vehicle, which uncovered a small amount of cash and another cellular telephone. After the search, Detective Fentz contacted Officer Heller and advised him of what had just occurred. The controlled substance, cash, and both cellular telephones were seized as a result of the search. The approximate weight of the controlled substance was 659 grams of Fentanyl, and the total cash seized was $548.00.

## II. CONCLUSIONS OF LAW AND DISCUSSION

The Fourth Amendment to the United States Constitution provides that people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The United States Supreme Court has repeatedly emphasized that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "Clearly, the general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking an exemption from the requirement to show the need for it . . . .'" *Chimel v. California*, 395 U.S. 752, 762 (1969) (quoting *United States v. Jeffers*, 342 U.S. 48, 51 (1951)). In other words,

4

the Government has the burden to establish sufficient justification for a warrantless search or seizure. *See Vale v. Louisiana*, 399 U.S. 30, 34 (1970).

Similar to the protections afforded by the Fourth Amendment, the purpose of Article 1, Section 11 of the Indiana Constitution "is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). While Section 11 is virtually identical to the Fourth Amendment, Section 11 is given its own independent interpretation and application. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). When determining whether a search or seizure violates Section 11, courts evaluate "the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). The government bears the burden of showing that the search was reasonable under the totality of the circumstances. *Mitchell*, 745 N.E.2d at 786.

In his Motion, Colbert asserts that the search and seizure conducted on November 14, 2018, violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Colbert asks the Court to suppress all evidence obtained by the Government as a result of its warrantless search of his person. Without pointing to any specific facts, Colbert generally argues that the warrantless search violated the Fourth Amendment and does not fall under one of the exceptions to the warrant requirement, and the search was unreasonable under the Indiana Constitution.

The Government responds that Colbert's traffic stop was initiated because Detective Fentz observed multiple traffic violations, and "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Thus, the Government argues, because Detective Fentz observed Colbert commit multiple traffic violations, he had probable cause to stop Colbert's vehicle, and

5

the decision to stop Colbert was reasonable. Before the traffic stop, Detective Fentz had been informed by Officer Heller that the Pontiac had just left the suspected drug stash house. When Detective Fentz activated his police lights, Colbert did not timely pull over. When Detective Fentz approached Colbert's vehicle, he could smell marijuana coming from Colbert, and when he asked Colbert to exit the vehicle, he had to ask Colbert several times before Colbert complied. Detective Fentz also observed Colbert hesitating after exiting the vehicle and looking back at his vehicle, and he observed a bulge in Colbert's pants pocket. When they were sitting in the patrol car, Colbert continued to smell of marijuana, and he became nervous and started asking questions. When Detective Fentz processed Colbert's information, he learned that Colbert had a concealed carry permit. He also obtained a signed consent to search form from Colbert, to search his vehicle. Based on the unfolding facts and based on his thirteen years of police experience and work as a narcotics detective, Detective Fentz developed a specific articulable suspicion that Colbert may have been armed.

Relying on *Terry v. Ohio*, 392 U.S. 1 (1968), the Government asserts that a person may be briefly stopped for questioning and a pat down search without a warrant if the officer has "a reasonable suspicion of criminal activity" that is based on specific, articulable facts, *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996), and where the rationale for the pat down is self-defense or defense of others. Pointing to the facts noted above, the Government argues probable cause existed to make the traffic stop and specific, articulable facts supported Detective Fentz's reasonable suspicion of criminal activity, and that Colbert may be armed, posing a danger to the officers. The Government asserts the officers were justified in their search and pat down of Colbert.

The Government further argues that probable cause existed to search Colbert incident to an arrest based on the strong smell of marijuana that stayed with Colbert when he was in his own vehicle, when he was in Detective Fentz's vehicle, and when he exited Detective Fentz's vehicle to interact with Officer Brandon. An officer has probable cause when, considering the totality of the circumstances, "a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (citation and quotation marks omitted). The smell of marijuana alone can supply the probable cause necessary for a possession arrest. *United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) ("the odor of marijuana, if sufficiently localized to a specific person, provides probable cause to arrest that person for the crime of marijuana possession"). If an officer has probable cause to arrest, he also may conduct a search incident to that lawful arrest without any additional justification. *United States v. Robinson*, 414 U.S. 218, 235 (1973). The Government asserts that such is the case here with Colbert, and the search of Colbert was lawful under the Fourth Amendment.

The Court looks at the "totality of the circumstances" to determine whether probable cause exists, both with respect to the informant's veracity and reliability and as a basis for the information as well as with respect to the degree the information or tip has been corroborated. *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 238–45 (1983)). The Court agrees that probable cause existed to support the traffic stop as there was reasonable suspicion of criminal activity based on specific articulable facts to justify a *Terry* pat down. Officer Brandon arrived on the scene to assist Detective Fentz, who told Officer Brandon that he had not yet searched Colbert for weapons or contraband. Officer Brandon approached Colbert, smelled a strong odor of marijuana, began a pat down search, and discovered the bulge in Colbert's pants

7

pocket. Officer Brandon asked if he could remove the object from the pocket, to which Colbert consented. Officer Brandon then felt a hard object in the front of Colbert's waistband and asked what it was, and Colbert began to reach for the object, but Officer Brandon was able to retrieve it. Ultimately the object proved to be a controlled substance, not a firearm. In addition, there was probable cause to conduct a search incident to an arrest based on Colbert smelling of marijuana.

Because the case law and facts favor the Government and show that the search and seizure were supported by probable cause as well as reasonable suspicion, the Court concludes that suppression of the evidence is not warranted. The Court also concludes that, the officers' actions in this case were reasonable, thereby satisfying the requirements of Article 1, Section 11 of the Indiana Constitution.

### III.  CONCLUSION

Based upon the totality of the circumstances, probable cause supported each step of the search and seizure. For the reasons stated above, the Court **DENIES** Colbert's Motion to Suppress ([Filing No. 86](#)).

**SO ORDERED.**

Date: 6/10/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov